**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Criminal Case No.   22-cr-313-RM

UNITED STATES OF AMERICA,

   Plaintiff,

v.

1.  JAREH SEBASTIAN DALKE,

   Defendant.

---

**INDICTMENT**

---

The Grand Jury charges:

## GENERAL ALLEGATIONS

### The Defendant

1.      The defendant, JAREH SEBASTIAN DALKE ("DALKE"), was a civilian employee of the National Security Agency ("NSA") from June 6, 2022, to July 1, 2022. He worked as an Information Systems Security Designer and held a Top Secret security clearance.  DALKE obtained his B.S. in Cybersecurity and Information Assurance from Western Governor's University in 2019.  Between 2015 and 2018 DALKE was a member of the U.S. Army.  He served as an E-3 Private First Class and held a Secret security clearance.  DALKE is a 30-year-old United States citizen who resides in Colorado Springs, Colorado.

### Classified Information

At all times relevant to this Indictment:

2.      Under Executive Order 13526, information in any form may be classified if

it: (1) is owned by, produced by or for, or is under the control of the United States Government; (2) falls within one or more of the categories set forth in the Executive Order [Top Secret ("TS"), Secret ("S"), and Confidential ("C")]; and (3) is classified by an original classification authority who determines that its unauthorized disclosure reasonably could be expected to result in damage to the national security.

3.      Where unauthorized disclosure could reasonably result in damage to the national security, the information may be classified as "Confidential" and must be properly safeguarded.  Where unauthorized disclosure could reasonably result in serious damage to the national security, the information may be classified as "Secret" and must be properly safeguarded.  Where unauthorized disclosure could reasonably result in exceptionally grave damage to the national security, the information may be classified as "Top Secret" and must be properly safeguarded.

4.      Sensitive Compartmented Information ("SCI") means classified information concerning or derived from intelligence sources, methods, or analytical processes, which is required to be handled within formal access control systems.  Special Intelligence, or "SI," is an SCI control system designed to protect technical and intelligence information derived from the monitoring of foreign communications signals by other than the intended recipients.  The SI control system protects SI-derived information and information relating to SI activities, capabilities, techniques, processes, and procedures.  Special Intelligence-Gamma, or "SI-G" is a sub-compartment of SI.

5.      Classified information may be marked as "Not Releasable to Foreign Nationals/Governments/Non-US Citizens," abbreviated "NOFORN" or "NF," to indicate information that may not be released in any form to foreign governments, foreign

nationals, foreign organizations, or non-U.S. citizens without permission of the originator.

6.     Classified information may also be marked as "Releasable to USA//Five Eyes," abbreviated "REL TO USA//FVEY," which means that the information is releasable to the "Five Eyes" partners of the United States, which consist of Great Britain, Canada, Australia, and New Zealand.  Classified information may also be marked as releasable to specified countries.  For example, "REL TO USA, CAN, GBR" means that the information is releasable to Canada and Great Britain.  Information marked "REL TO" requires a decision to be made that the information is releasable to a specific foreign government or foreign governments.

7.     Classified information may also be marked as "Originator Controlled," abbreviated "ORCON" or "OC."  This marking indicates that dissemination beyond pre-approved U.S. entities requires originator approval.

8.     Foreign Intelligence Surveillance Act, or "FISA," is a dissemination control designed to protect intelligence information derived from the collection of information authorized under the Foreign Intelligence Surveillance Act by the Foreign Intelligence Surveillance Court, or "FISC."

9.     Classified information of any designation may be shared only with persons determined by an appropriate United States Government official to be eligible for access, and who possess a "need to know."  Among other requirements, in order for a person to obtain a security clearance allowing that person access to classified United States Government information, that person is required to and must agree to properly protect classified information by not disclosing such information to persons not entitled

3

to receive it, by not unlawfully removing classified information from authorized storage facilities, and by not storing classified information in unauthorized locations.  If a person is not eligible to receive classified information, classified information may not be disclosed to that person.  In order for a foreign government to receive access to classified information, the originating United States agency must determine that such release is appropriate.

### DALKE'S Security Clearance

10.     As required for his assignment at the NSA, DALKE held a Top Secret security clearance with access to sensitive compartmented information, which took effect upon his entry on duty to the NSA in June 2022.  To acquire his security clearance, DALKE signed a lifetime binding non-disclosure agreement.  In that agreement, DALKE acknowledged that "all protected information to which I may obtain access hereafter, is and will remain the property of the United States Government unless and until otherwise determined by an appropriate official or final ruling of a court of law."  DALKE also acknowledged that the "failure to return such materials may be a violation of Section 793 of Title 18, United States Code."  DALKE further acknowledged that "the unauthorized disclosure of protected information may invoke the criminal sanctions prescribed by one or more of the following statutes Sections 793, 794, 798, 952, and 1924 of Title 18."

11.     To obtain access to certain sensitive compartmented information, DALKE signed two indoctrination memoranda in which DALKE acknowledged that "THE NEED FOR SPECIAL PROTECTION OF THIS MATERIAL WAS MADE KNOWN TO ME, AND I WAS REMINDED THAT ACCESS TO THIS MATERIAL IS GOVERNED BY THE

TERMS OF THE NSA SECURITY AGREEMENT THAT I HAVE PREVIOUSLY SIGNED."

12.     While at the NSA, DALKE also received training on his duty to protect classified materials from unauthorized disclosure, which included complying with handling, transportation, and storage requirements.  In particular, DALKE was advised that the unauthorized disclosure of Top Secret information reasonably could be expected to cause exceptionally grave damage to the national security of the United States and that a violation of the rules governing the handling of classified information could result in criminal prosecution.

13.     DALKE submitted his resignation to the NSA on June 28, 2022, and was debriefed from his TS//SCI clearance on July 1, 2022.  On July 1, 2022, DALKE also signed a termination statement in which he agreed that, "even though my authorized access to NSA is hereby terminated, I continue to be obligated . . . to preserve and safeguard the security of protected information."  DALKE also acknowledged that he was required to return "to the government all protected information to which I may have obtained access during the course of my employment or other service with the NSA."

**DALKE Transmits National Defense Information**

14.     Between on or about August 1, 2022, and September 26, 2022, DALKE, using a particular email account, communicated with a person he believed to be associated with the Russian Federation ("Russia"), a country with many interests that are adverse to the United States.  DALKE was in fact communicating with a Federal Bureau of Investigation ("FBI") Online Covert Employee ("OCE").

15.     In email communications with the OCE, DALKE stated that he was an

employee of the U.S. government and that he applied for his current position because he had "questioned our role in damage to the world in the past and by mixture of curiosity for secrets and a desire to cause change."

16.    DALKE told the OCE that he had "exfiltrated some information that is of a very high level."  DALKE described the information he had access to as relating to foreign targeting of U.S. systems and information on cyber operations, among other topics.

17.    DALKE further noted that he was in financial need and was seeking compensation via a specific type of cryptocurrency in return for providing information he had procured, stating, "[t]here is an opportunity to help balance scales of the world while also tending to my own needs."

18.    On or about August 6, 2022, DALKE transmitted excerpts of three documents to the OCE ("Excerpt 1," "Excerpt 2," and "Excerpt 3"), each of which contained classification markings.  Excerpt 1 is the cover page and table of contents of a threat assessment of Foreign Government-1's military offensive capabilities.  Excerpt 2 relates to plans to update a certain cryptographic program.  Excerpt 3 is a threat assessment of sensitive U.S. defense capabilities, a portion of which relates to Foreign Government-1.  The excerpts received by the OCE also contained numbering, which were not original to the documents and appear in the table below (e.g. 1-1, 1-2).  The excerpts were classified as follows, as determined by an original classification authority (OCA):

| Excerpt Title | Excerpt Classification Level (as determined by OCA) |
|---|---|
| 1-1 | SECRET//REL TO USA//FVEY |
| 1-2 | UNCLASSIFIED |
| 2-1 | UNCLASSIFIED//FOUO |
| 2-2 | TOP SECRET//SI//NF |
| 2-3 | SECRET//NOFORN |
| 2-4 | TOP SECRET//SI-G//ORCON/NOFORN |
| 3-1 | SECRET//NOFORN |
| 3-2 | TOP SECRET//SCI |

19.     DALKE stated that he was providing the excerpts to demonstrate both his "legitimate access and willingness to share" and further noted that the excerpts were just a "small sample to what is possible."

20.     Using a cryptocurrency address DALKE provided to the OCE, on or about August 24, 2022, August 25, 2022, September 2, 2022, and September 5, 2022, the OCE deposited a total of approximately 104.2703 units of the cryptocurrency DALKE requested, worth approximately $16,499.04 USD, in DALKE's account.  DALKE confirmed receipt of each transfer.

21.     On or about August 26, 2022, DALKE requested $85,000 in return for all the information in his possession, which he opined would be of value to Russia.

22.     To allow for the secure transfer of additional documents to which DALKE claimed to have access, the OCE established a secure, digital connection that would allow DALKE to transfer the remaining materials in his possession and told DALKE that the digital connection would be set up in the Washington, D.C., area.  However, DALKE told the OCE that he was not currently in the D.C. area and did not want to disclose his

current location for fear of the U.S. government being able to discern his identity. Although DALKE expressed his desire to "provide the documents as soon as possible," he expressed concern about his travel being monitored and asked the OCE how close he would need to be to the digital connection to perform the transfer.  In response to DALKE's concerns, the OCE said that the digital drop might be able to be set up in another location and asked DALKE where he could travel without being monitored.

23.     On or about September 18, 2022, DALKE, who had never disclosed his location to the OCE, asked the OCE whether the OCE would be able to set up the secure connection in Denver, Colorado, on September 28 or 29, 2022.  DALKE told the OCE, "If the Americans ever get this information I am afraid it will make obvious who has shared this information, but if you can get approval for this last accommodation I am sure I can get you the documents quickly."

24.     On or about September 19, 2022, the OCE told DALKE to be prepared to be in Denver on September 28 or 29, as DALKE had requested, and that additional instructions would follow.  On or about September 20, 2022, DALKE sent an email to the OCE confirming that he would be available on the stated days and that he would "wait to receive the transfer information when available."  DALKE added, "I look forward to finally get [sic] you this information and the benefit it will bring.  I am glad this arrangement was possible."

25.     On or about September 23, 2022, the OCE informed DALKE that a secure digital connection would be available for a period of four hours on September 28, 2022. The OCE told DALKE to stand by for the specific location.

26.     On or about September 26, 2022, DALKE sent an email to the OCE

8

stating that DALKE would "wait for the instruction." Later that day, the OCE provided the unique information DALKE would need to access the secure connection and told DALKE the secure connection would be available at Union Station in downtown Denver, Colorado, on September 28, 2022, between 11:30 a.m. and 3:30 p.m., during which time DALKE could complete the transmission.

27.     On or about September 28, 2022, DALKE arrived at Union Station in Denver, Colorado. Using a laptop computer and the instructions provided by the OCE, DALKE accessed the secure connection and transferred five (5) documents ("Document 1," "Document 2," Document 3," Document 4," and "Document 5"). Document 1 is a letter stating, in part:

> I am very happy to finally provide this information to you. I thank you for your great efforts to accommodate this transfer.
> . . .
> I look forward to our friendship and shared benefit. Please let me know if there are desired documents to find and I will try when I return to my main office.

Document 2 is a ten-page typed document containing additional information related to the threat assessment of Foreign Government-1's military offensive capabilities. Information from Excerpt 1 is also contained within Document 2. Document 3 is a fourteen-page typed document containing additional information related to sensitive U.S. defense capabilities, a portion of which relates to Foreign Government-1. Information from Excerpt 3 is also contained within Document 3. Document 4 is a fourteen-page typed document containing additional information regarding plans to update a certain cryptographic program. Document 5 is a fourteen-page typed annex containing additional information related to the plans to update a certain cryptographic program. Information from Excerpt 2 is also contained within Documents 4 and 5.

Documents 2-5 contained information classified at the following level, as determined by an original classification authority (OCA):

| Document Title | Excerpt Classification Level (as determined by OCA) |
|---|---|
| 2 | TS//SI-G//OC/REL TO USA, CAN, GBR/FISA |
| 3 | TS//SI-G//OC/NF |
| 4 | TS//SI-G//OC/NF |
| 5 | TS//SI-G//OC/NF |

28.     Paragraphs 1-27 of these General Allegations are hereby reincorporated as to all Counts charged below.

## COUNT 1

On or about August 6, 2022, in the State and District of Colorado, the defendant, JAREH SEBASTIAN DALKE, with the intent and reason to believe that it was to be used to the injury of the United States and to the advantage of a foreign government, to wit, the Russian Federation, did knowingly and unlawfully attempt to communicate, deliver, and transmit to a representative, officer, agent, and employee of a foreign government, to wit, the Russian Federation, directly and indirectly, documents and information relating to the national defense, to wit, part of a threat assessment of Foreign Government-1's military capabilities.

All in violation of Title 18, United States Code, Section 794(a).

## COUNT 2

On or about August 6, 2022, in the State and District of Colorado, the defendant, JAREH SEBASTIAN DALKE, with the intent and reason to believe that it was to be used to the injury of the United States and to the advantage of a foreign government, to

wit, the Russian Federation, did knowingly and unlawfully attempt to communicate, deliver, and transmit to a representative, officer, agent, and employee of a foreign government, to wit, the Russian Federation, directly and indirectly, documents and information relating to the national defense, to wit, part of a document relating to plans to update a certain cryptographic program.

All in violation of Title 18, United States Code, Section 794(a).

## **COUNT 3**

On or about August 6, 2022, in the State and District of Colorado, the defendant, JAREH SEBASTIAN DALKE, with the intent and reason to believe that it was to be used to the injury of the United States and to the advantage of a foreign government, to wit, the Russian Federation, did knowingly and unlawfully attempt to communicate, deliver, and transmit to a representative, officer, agent, and employee of a foreign government, to wit, the Russian Federation, directly and indirectly, documents and information relating to the national defense, to wit, part of a document, a portion of which relates to Foreign Government-1, containing a threat assessment of sensitive U.S. defense capabilities.

All in violation of Title 18, United States Code, Section 794(a).

## COUNT 4

On or about September 28, 2022, in the State and District of Colorado, the defendant, JAREH SEBASTIAN DALKE, with the intent and reason to believe that it was to be used to the injury of the United States and to the advantage of a foreign government, to wit, the Russian Federation, did knowingly and unlawfully attempt to communicate, deliver, and transmit to a representative, officer, agent, and employee of a foreign government, to wit, the Russian Federation, directly and indirectly, documents and information relating to the national defense, to wit, a threat assessment of Foreign Government-1's military capabilities.

All in violation of Title 18, United States Code, Section 794(a).

## COUNT 5

On or about September 28, 2022, in the State and District of Colorado, the defendant, JAREH SEBASTIAN DALKE, with the intent and reason to believe that it was to be used to the injury of the United States and to the advantage of a foreign government, to wit, the Russian Federation, did knowingly and unlawfully attempt to communicate, deliver, and transmit to a representative, officer, agent, and employee of a foreign government, to wit, the Russian Federation, directly and indirectly, documents and information relating to the national defense, to wit, plans to update a certain cryptographic program.

All in violation of Title 18, United States Code, Section 794(a).

## **COUNT 6**

On or about September 28, 2022, in the State and District of Colorado, the defendant, JAREH SEBASTIAN DALKE, with the intent and reason to believe that it was to be used to the injury of the United States and to the advantage of a foreign government, to wit, the Russian Federation, did knowingly and unlawfully attempt to communicate, deliver, and transmit to a representative, officer, agent, and employee of a foreign government, to wit, the Russian Federation, directly and indirectly, documents and information relating to the national defense, to wit, a document, a portion of which relates to Foreign Government-1, containing a threat assessment of sensitive U.S. defense capabilities.

All in violation of Title 18, United States Code, Section 794(a).

## **FORFEITURE ALLEGATION**

1.      The allegations contained in Counts One, Two, Three, Four, Five, and Six

of this Indictment are hereby realleged and incorporated by reference for the purpose of

alleging forfeitures pursuant to Title 18, United States Code, Section 794(d)(1).

2.      Upon conviction of the offenses in violation of Title 18, United States

Code, Section 794(a) set forth in Counts One, Two, Three, Four, Five, and Six of this

Indictment, the defendant, JAREH SEBASTIAN DALKE, shall forfeit to the United

States of America, pursuant to Title 18, United States Code, Section 794(d)(1), any

property constituting, or derived from, proceeds obtained, directly or indirectly, as a

result of such violations, and any property used, or intended to be used, in any manner

or part, to commit or to facilitate the commission of such violations.  The property to be

forfeited includes, but is not limited to, a money judgment in the amount of proceeds

obtained by the defendant.

3.      If any of the property described above, as a result of any act or omission

of the defendant:

          a.  cannot be located upon the exercise of due diligence;

          b.  has been transferred or sold to, or deposited with, a third party;

          c.  has been placed beyond the jurisdiction of the court;

          d.  has been substantially diminished in value; or

          e.  has been commingled with other property which cannot be divided

            without difficulty,

the United States of America shall be entitled to forfeiture of substitute property

pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18,

United States Code, Section 794(d)(3).

All pursuant to 18 U.S.C. § 794(d).

A TRUE BILL:

*Ink signature on file with the Clerk's*
*Office*_____
FOREPERSON

COLE FINEGAN
United States Attorney

By:  *s/ Julia Martinez*_____
Julia Martinez
Assistant U.S. Attorney
U.S. Attorney's Office
1801 California St., Ste. 1600
Denver, CO 80202
Telephone: 303-454-0100
E-mail:  Julia.Martinez@usdoj.gov
Attorney for Government

By:  *s/ Jena Neuscheler*____
Jena Neuscheler
Assistant U.S. Attorney
U.S. Attorney's Office
1801 California St., Ste. 1600
Denver, CO 80202
Telephone: 303-454-0100
E-mail:  Jena.Neuscheler@usdoj.gov
Attorney for Government

MATTHEW G. OLSEN
Assistant Attorney General
National Security Division
U.S. Department of Justice

By:  *s/ Christina Clark*_____
Christina Clark
Trial Attorney
National Security Division
Counterintelligence and Export Control
Section
950 Pennsylvania Avenue, NW
Washington, DC 20530
Telephone: (202) 514-2000
E-mail: Christina.Clark3@usdoj.gov
Attorney for Government

By:  *s/ Adam L. Small*_____
Adam L. Small
Trial Attorney
National Security Division
Counterintelligence and Export Control
Section
950 Pennsylvania Avenue, NW
Washington, DC 20530
Telephone: (202) 514-2000
E-mail: Adam.Small@usdoj.gov
Attorney for Government