**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Criminal Case No. 22-cr-313-RM

UNITED STATES OF AMERICA,

       Plaintiff,

v.

1.  JAREH SEBASTIAN DALKE,

       Defendant.

---

**UNOPPOSED MOTION TO APPOINT A CLASSIFIED INFORMATION**
**SECURITY OFFICER AND TO SET A STATUS CONFERENCE**

---

The United States of America, by and through its attorneys, Cole Finegan, United States Attorney for the District of Colorado, Matthew G. Olsen, Assistant Attorney General for the National Security Division, and undersigned counsel, moves this Court, pursuant to Section 2 of the Classified Information Procedures Act ("CIPA"), 18 U.S.C. App. 3.  The government anticipates that there may be litigation concerning the discovery and use of classified information in this matter.  For that reason, the government respectfully submits this memorandum of law to apprise the Court of the applicability of CIPA and to move the court to appoint a Classified Information Security Officer ("CISO") and schedule a status conference in approximately 90 days.

The government has consulted with counsel for the defendant, who do not object to either the appointment of a CISO or the setting of a status conference.

## BACKGROUND

On September 27, 2022, the government obtained a complaint charging the defendant with three counts of attempting to transmit national defense information to an agent or representative of a foreign government, in violation of 18 U.S.C. § 794(a).  On September 28, 2022, the Federal Bureau of Investigation arrested the defendant on the complaint.  He made his initial appearance on September 29, 2022.

On October 6, 2022, the Grand Jury returned an indictment that charged the defendant with six counts of attempting to transmit national defense information to an agent or representative of a foreign government, in violation of 18 U.S.C. § 794(a).  A detention hearing was held on October 11, 2022.  After reviewing written submissions and oral arguments from both parties, Magistrate Judge S. Kato Crews issued an order of detention.  In that order, Judge Crews determined that the defendant presented a danger to the community and posed a flight risk.

A status conference is presently scheduled in this Court for October 27, 2022.  The government anticipates producing at least one production of unclassified discovery by November 1, 2022.  That discovery will include, among other things, a redacted version of email communications between the defendant and an FBI online covert employee (OCE), financial records, telecommunications records, and search warrants and returns.  Unclassified discovery will continue on a rolling basis thereafter.

In addition, there is a significant amount of discovery that is classified and that the government cannot produce until the defense team has received their security clearances.  The government has consulted with the Classified Information Security Officer ("CISO"), who explained that it will likely be *at least* sixty days before the defense team is cleared to the Top

Secret//Sensitive Compartmented Information level.[1]  Because it is difficult to estimate precisely when the defense team will be cleared, the government believes that it would be premature to set a schedule for classified discovery and CIPA litigation at the October 27 status conference.

Therefore, the government respectfully requests that the court set a second status conference in approximately ninety days.  By that date, the government should be able to provide a more fulsome update on the defense team's clearances, classified discovery, and anticipated CIPA litigation.  Nevertheless, to better familiarize the parties and the Court with applicable definitions and procedures, the government respectfully submits the following summary of CIPA and related caselaw.

## OVERVIEW OF CIPA

CIPA contains a set of procedures by which federal district courts rule on pretrial and trial matters concerning the discovery, admissibility, and use of classified information[2] in criminal cases.  CIPA's fundamental purpose is to "harmonize a defendant's right to obtain and present exculpatory material [at] trial and the government's right to protect classified material in the national interest." *United States v. Pappas*, 94 F.3d 795, 799 (2d Cir. 1996).  *See also United States v. Apperson*, 441 F.3d 1162, 1193 n.8 (10th Cir. 2006) (CIPA "evidence[s] Congress's intent to protect classified information from unnecessary disclosure at any stage of a criminal trial.").

---

[1] The defense team may be able to obtain interim Top Secret clearance sooner, which would allow access to some, but not all, of the classified discovery the government anticipates in this case.

[2] For the purpose of CIPA, "classified information" includes any information or material determined by the United States Government to require protection against unauthorized disclosure for reasons of national security.  18 U.S.C. App. III § 1(a).  "National security" means the national defense and foreign relations of the United States.  *Id.* § 1(b).  *See also* Executive Order 13526 (defining classified information).

CIPA neither creates a new right of discovery nor expands the rules governing the admissibility of evidence. *See, e.g.*, *United States v. Dumeisi*, 424 F.3d 566, 578 (7th Cir. 2005) ("CIPA does not create any discovery rights for the defendant."); *United States v. Johnson*, 139 F.3d 1359, 1365 (11th Cir. 1998) ("CIPA has no substantive impact on the admissibility or relevance of probative evidence."). Rather, CIPA applies preexisting discovery law in criminal cases to classified information and restricts discovery of classified information to protect the government's national-security interests. *See United States v. Lustyik*, 833 F.3d 1263, 1271 (10th Cir. 2016) ("CIPA provides guidance to trial judges applying Federal Rule of Criminal Procedure 16(d) where confidential information is involved." (citation omitted)); *United States v. Klimavicius-Viloria*, 144 F.3d 1249, 1261 (9th Cir. 1998); *United States v. Baptista-Rodriguez*, 17 F.3d 1354, 1363-64 (11th Cir. 1994). In other words, "CIPA is a procedural statute . . . that does not give rise to an independent right of discovery." *Lustyik*, 833 F.3d at 1271.

A.   Section 2—Pretrial Conference

Section 2 of CIPA provides that "[a]t any time after the filing of the indictment or information, any party may move for a pretrial conference to consider matters relating to classified information that may arise in connection with the prosecution." 18 U.S.C. App. 3 at § 2. After a Section 2 motion is filed, the Court "shall promptly hold a pretrial conference to establish the timing of requests for discovery, the provision of notice required by Section 5 of [CIPA], and the initiation of the procedure established by Section 6 of [CIPA]." *Id.* During the pretrial conference, district courts generally establish the trial schedule for the case, including the timing of (1) discovery requests by the defense; (2) motions by the government for summary, substitution or deletion of classified information; (3) the defense's pretrial notice to the United States under CIPA Section 5 whereby the defendant identifies an intent to disclose classified

information, if any, and explaining the need for such a disclosure; and (4) hearings concerning the use, relevance, and admissibility of classified information pursuant to CIPA Section 6. *See id.* Courts also may consider any matters relating to classified information, or any matters that promote a fair and expeditious trial. *Id.* To foster open discussions at the pretrial conference, Section 2 provides that no admission made by the defendant, or his attorney, at the pretrial conference may be used against the defendant unless the admission is in writing and signed by both the defendant and his attorney. *Id.*

    B.    <u>Section 3—Protective Orders</u>

Section 3 mandates that federal district courts issue a protective order upon motion by the United States to protect against the improper disclosure of any classified information produced by the government to the defense. *Id.* § 3. Section 3 was intended "to codify the well-established practice, based on the inherent authority of federal courts, to issue protective orders," *Pappas*, 94 F.3d at 801, as well as to supplement the Court's authority under Federal Rule of Criminal Procedure 16(d)(1) to issue protective orders in connection with the discovery process. The government expects that it will prepare a motion for a protective order once members of the defense team begin to receive their security clearances.

    C.    <u>Section 4—Protection of Classified Information During Discovery</u>

Section 4 of CIPA authorizes federal district courts to deny, or otherwise restrict, discovery of classified documents and information in the possession, custody, or control of the United States. 18 U.S.C. App. III § 4. Similarly, the Federal Rules of Criminal Procedure provide that district courts "may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief." Fed. R. Crim. P. 16(d)(1).

Section 4 provides that "[t]he court, upon a sufficient showing, may authorize the United States to delete specified items of classified information from documents" produced in discovery, "substitute a summary of the information for such classified documents," or substitute a statement admitting relevant facts the classified information would tend to prove." 18 U.S.C. App. 3 § 4. The legislative history of CIPA makes clear that Section 4 was intended to clarify the district court's power under Rule 16(d)(1) to deny, or restrict, discovery to protect national security. *See* S. Rep. No. 96-823 at 6, 1980 U.S.C.C.A.N. at 4299-4300. *See also Lustyik*, 833 F.3d at 1271 (CIPA permits courts to "issue protective orders denying or restricting discovery for good cause") (quoting *United States v. Aref*, 533 F.2d 72, 79-80 (2d Cir. 2008)).

Like Federal Rule of Criminal Procedure 16(d)(1), Section 4 provides the government may demonstrate the use of alternatives to be warranted through an *in camera, ex parte* submission to the court. 18 U.S.C. App. III § 4. ("The Court may permit the United States to make a request for such authorization in the form of a written statement to be inspected by the court alone."); *see, e.g., United States v. Abu-Jihaad*, 630 F.3d 102, 140 (2nd Cir. 2010); *United States v. Yunis*, 867 F.2d 617, 622-23 (D.C. Cir. 1989); *United States v. Sarkissian*, 841 F.2d 959, 965 (9th Cir. 1988); *United States v. Pringle*, 751 F.2d 419, 427 (1st 1984). The government's Section 4 filings, including all attachments, must remain *ex parte* and *in camera*, under seal, and preserved in the record to be made available to the appellate court in the event of an appeal. 18 U.S.C. App. III § 4.

D.    Sections 5 and 6—Procedure for Cases Involving Classified
       Information Possessed by or Disclosed to the Defendant

In this case, the government anticipates producing classified information to the defense team that will be used at a pretrial proceeding or trial. In addition, because he previously had access to classified information, the defendant may seek to use classified information he recalls

but that the government has not produced.  Section 5 requires a defendant who seeks to disclose

classified information at a pretrial proceeding or trial to provide timely written notice to the court

and the government.  *See* 18 U.S.C. App. III § 5(a).  The defendant must provide notice "within

the time specified by the court, or where no time is specified, within thirty days prior to trial."

*Id*.  Although the description of the classified information may be brief, it must be particularized

and set forth the specific classified information that the defendant reasonably believes to be

necessary for the defense.  *See United States v. Collins*, 720 F.2d 1195, 1199 (11th Cir. 1983).

The defendant must provide formal notice under Section 5 even if the government knows the

defendant may assert a defense involving classified information.  *See United States v. Badia*, 827

F.2d 1458, 1465-66 (11th Cir. 1987).

Section 5 specifically prohibits the defendant from disclosing any classified information

until after (1) providing notice, (2) allowing the government to seek a determination of the use,

relevance, and admissibility of such information under Section 6, and (3) the time for any

interlocutory appeal permitted under Section 7 expires.  18 U.S.C. App. III § 5(a).  If the

defendant fails to provide the requisite pretrial notice, the court may prohibit the disclosure of the

classified information by the defense, and it may prohibit the defendant from examining any

witness with respect to such information.  *Id*. § 5(b).

After the defendant files notice under Section 5 of CIPA, the government may request

that the court conduct a hearing to make "all determinations concerning the use, relevance or

admissibility" of the defense-noticed classified information.  18 U.S.C. App. III § 6(a).  Upon

such a request, the court *shall* conduct such a hearing, and it must conduct the hearing *in camera*

if the Attorney General certifies to the court that a public proceeding may result in the disclosure

of classified information.  *Id*.  Prior to the hearing, the government must first provide the

defendant with notice of the classified information that will be at issue. *Id.* § 6(b)(1). If the particular information previously was not available to the defendant, the government may, with the court's approval, provide a generic description of the material to the defendant. *Id.* The court also may order the government to provide the defendant with "details as to the portion of the indictment or information at issue in the hearing as are needed to give the defendant fair notice to prepare for the hearing." *Id.* § 6(b)(2).

If the government requests a hearing before the proceeding at which the defendant expects to disclose the classified information, the court must issue a ruling before the proceeding commences. *Id.* § 6(a). The district court's ruling must be in writing and should set forth the basis for its determination as to each item of classified information. *Id.*

After an *in camera* hearing, if the district court determines that the classified information at issue may not be disclosed during the proceeding, the record of the hearing must be sealed and preserved for use in the event of an appeal. *Id.* § 6(d). If the court finds the classified information useful, relevant, or otherwise admissible, the government may ask for the court to approve of (1) the government-proposed substitution of a statement admitting relevant facts that the specific classified information would tend to prove, or (2) the government-proposed substitution of a summary of the classified information. *Id.* § 6(c)(1).

If the court denies the government's motion for substitution under Section 6(c), CIPA permits the government, by affidavit from the Attorney General, to object to the disclosure of the classified information at issue. *Id.* § 6(e)(1). Upon the government's filing of the Attorney General's affidavit, the court "shall order that the defendant not disclose or cause the disclosure of such information," and it may impose a sanction against the government to compensate for the defendant's inability to present proof of the specific item of classified information. *See* S. Rep.

96-823 at 9, 1980 U.S.C.C.A.N. at 4302-3.  Section 6(e)(2) provides a sliding scale of possible sanctions, which include dismissal of specific counts, finding against the government on an issue to which the classified information related, striking or precluding testimony of a witness, or dismissing the indictment.  18 U.S.C. App. III § 6(e)(2).  An order imposing a sanction shall not take effect until the government has the opportunity to appeal the order under Section 7, or thereafter withdraw its objection to the disclosure of the information.  *Id*.

Whenever the court rules at a Section 6(a) hearing that classified information is admissible, the court must require the government to provide the defendant with information it expects to use to rebut the classified information, "unless the interests of fairness do not so require."  *Id*. § 6(f).  The court may place the United States under a continuing duty to disclose rebuttal information.  *Id*.  If the government fails to comply, the court may exclude the rebuttal evidence and prohibit the government from examining any witness with respect to such information.  *Id*.

E.    <u>Section 7—Interlocutory Appeal</u>

Section 7 permits the United States to take an expedited interlocutory appeal to the appellate court if the district court (a) authorizes the disclosure of classified information, (b) imposes sanctions for nondisclosure of classified information, or (c) refuses to issue a protective order sought by the United States to prevent the disclosure of classified information.  *Id*. § 7.  If an appeal is taken, the court must not commence the trial until the appeal is resolved.  *Id*.  Such an appeal and decision does not affect the defendant's right to lodge a subsequent appeal upon conviction (if any) of an adverse ruling by the trial court.  *Id*. § 7(b).

F.     Section 8—Procedures Governing the Introduction of Classified Information at
Trial or at Pretrial Proceeding

Section 8 prescribes additional protections and procedures governing the introduction of classified information into evidence.  *Id.* § 8.  Specifically, Section 8(a) provides that classified documents may be admitted into evidence without changing their classification status.  Section 8(b) permits the court to order admission into evidence of only a part of a document when fairness does not require the whole document to be considered by the factfinder.

Section 8(c) provides a procedure to address the problem presented at a proceeding when the defendant's counsel asks a question, or embarks on a line of inquiry, that would require the witness to disclose classified information.  Specifically, under Section 8(c), the government may object to any question, or line of inquiry, that may require the witness to disclose classified information not previously held to be admissible.  18 U.S.C. App. III § 8(c).  Following an objection, the court "shall take such suitable action to determine whether the response is admissible as will safeguard against the compromise of any classified information."  *Id.*  In effect, this procedure supplements the notice provision under Section 5 and the hearing provision in Section 6(a) to cope with situations that cannot be handled effectively by those sections, such as where the defense does not realize that the answer to a given question will reveal classified information.

G.     Section 9—Security Procedures

Section 9 requires the Chief Justice of the United States, in consultation with other executive branch officials, to prescribe rules establishing procedures to protect classified information in the custody of federal courts from unauthorized disclosure.  18 U.S.C. App. III § 9(a).  Security Procedures established pursuant to this provision are codified directly following Section 9 of CIPA.  They provide that in any criminal case in which classified information "is

10

within, or reasonably expected to be within, the custody of the court, the court shall designate a court security officer." *See* Pub. L. 96-456 (1980).  The government recommends Mr. Winfield S. "Scooter" Slade, Supervisory Security Specialist, for the position of Classified Information Security Officer in the above-captioned case.  The government also recommends Security Specialists Daniel O. Hartenstine, Patrice E. King, Daniella M. Medel, Connor B. Morse, Matthew W. Mullery, Carli V. Rodriguez-Feo, Harry J. Rucker, and Abigail J. Trzyzewski as alternate Classified Information Security Officers.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court appoint W.

Scooter Slade as the court security officer and schedule a status conference in ninety days.

Respectfully submitted,

COLE FINEGAN
United States Attorney

By:  *s/ Julia Martinez*                    By:  *s/ Jena Neuscheler*
Julia Martinez                              Jena Neuscheler
Assistant U.S. Attorney                     Assistant U.S. Attorney
U.S. Attorney's Office                      U.S. Attorney's Office
1801 California St., Ste. 1600              1801 California St., Ste. 1600
Denver, CO 80202                            Denver, CO 80202
Telephone: 303-454-0100                     Telephone: 303-454-0100
E-mail:  Julia.Martinez@usdoj.gov           E-mail:  Jena.Neuscheler@usdoj.gov
Attorney for Government                     Attorney for Government


MATTHEW G. OLSEN
Assistant Attorney General
National Security Division
U.S. Department of Justice

By:  *s/ Christina Clark*                   By:  *s/ Adam L. Small*
Christina Clark                             Adam L. Small
Trial Attorney                              Trial Attorney
National Security Division                  National Security Division
Counterintelligence and Export Control      Counterintelligence and Export Control
Section                                     Section
950 Pennsylvania Avenue, NW                 950 Pennsylvania Avenue, NW
Washington, DC 20530                        Washington, DC 20530
Telephone: (202) 514-2000                   Telephone: (202) 514-2000
E-mail: Christina.Clark3@usdoj.gov          E-mail: Adam.Small@usdoj.gov
Attorney for Government                     Attorney for Government

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 24th day of October 2022, I filed the foregoing with the Clerk

of Court using the CM/ECF system, which will send an electronic notification to all counsel of

record.

<u>*s/ Portia Peter*</u>
Portia Peter
Legal Assistant
U.S. Attorney's Office
1801 California St., Ste. 1600
Denver, CO 80202
Telephone: 303-454-0100

13